IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:11cv126

| | |
|---|---|
| LAWRENCE J. TRABER and ELGE L. TRABER, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | MEMORANDUM AND |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., et al. ) ) ) ) | RECOMMENDATION |
| Defendants. ) _____ ) | |

Pending before the Court are Defendant iMortgage Services LLP's ("iMortgage") Motion to Dismiss [# 53] and the Motion to Dismiss [# 52] filed by Defendants Mortgage Electronic Systems Inc. ("MERS") and Federal National Mortgage Association, named as Fannie Mae in the Second Amended Complaint. Plaintiffs brought this action against Defendants asserting a claim for quiet title under North Carolina law and a claim pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendants iMortgage, MERS and Fannie Mae move to dismiss all the claims asserted against them in the Second Amended Complaint. The Court **RECOMMENDS** that the District Court **GRANT** the Defendants' motions [# 52 & # 53].

I. Background

Plaintiffs Lawrence L. Traber and Elge L. Traber are residents of North Carolina. (Pls.' Second Am. Compl. ¶¶ 2, 4.) In 2006, Plaintiffs refinanced their

-1-

mortgage with Defendant Mid-Atlantic Financial Services Inc. ("Mid-Atlantic") for $417,000.  (Id. ¶¶ 11, 26.)  Defendant iMortgage was the trustee of the Note and Defendant MERS was the nominee and beneficiary of the security interest. (Id.)  A Deed of Trust was recorded with the Register of Deeds.  (Id. ¶ 13.) Plaintiffs allege that there have been no further recordings regarding the property. (Id. ¶ 14.)

In 2009, Plaintiffs became concerned because of changes in the servicing agent and ownership of the Note.  (Id. ¶ 15.)  Plaintiffs allege that Defendant MERS bifurcated the loan by retaining the security interest while selling the Note, thereby causing the loan on the property to become unsecured.  (Id.)  Specifically, Plaintiffs allege that ownership of the Note was transferred from Defendant Mid-Atlantic to Washington Mutual Bank ("Washington Mutual"), who was the successor in interest to Defendant Mid-Atlantic. (Id. ¶¶ 20, 26.)  In 2008, the Federal Deposit Insurance Corporation took over Washington Mutual and subsequently sold its assets.  (Id. ¶ 28.)   Plaintiffs also allege that they received a letter from Safeco in 2008 stating that it owned the Note.  (Id. ¶ 29.)

Meanwhile, Plaintiffs received a letter from the foreclosure department of a law firm listing their property as a foreclosure property address and indicating a notice of intention to collect attorneys' fees.  (Id. ¶ 16.)  Plaintiffs then  received a letter from Bank of America Home Loans Serving stating that the loan was in foreclosure.  (Id. ¶ 17; Ex. F1 to Pls.' Second Am. Compl.)  Plaintiffs, however, contend that none of the communications regarding the foreclosure of the property

identified who owned the Note or the Deed of Trust. (Pls.' Second Am. Compl. ¶¶ 16, 19.)

Plaintiffs now contend that sometime between 2010 and the filing of the Second Amended Complaint, someone materially altered the Note in a fraudulent manner because it should have contained an assignment from Defendant Mid-Atlantic to Washington Mutual. (Id. ¶¶ 25, 27, 33.) Plaintiffs allege that during this time period the note was endorsed to show the assignment of the Note from Defendant Mid-Atlantic to Countrywide, even though this should have been done prior to 2010. (Id. ¶¶ 32-36.)

On December 17, 2010, Plaintiffs initiated an action against MERS, Fannie Mae, Bank of America, and various other corporate entities in the Superior Court of Polk County, North Carolina.[1] (Ex. A to Mot. Dismiss.) The Complaint asserted various claims against the defendants arising out the mortgage at issue in this dispute. (Id.) Subsequently, the Superior Court allowed Plaintiffs to amend their Complaint and assert a Quit Title claim. (Ex. E to Mot. Dismiss.) At its root, however, the Complaint and Amended Complaint were essentially an action requesting that the Court declare that the defendants have no interest in the property as a result of the various transfers of the Note among corporate entities and their failure to provide Plaintiffs with documentation demonstrating ownership

---

[1] The Court has considered the pleadings from the prior state court action in ruling on Defendants' Motions to Dismiss, which it may do without converting the Motions to Dismiss into motions for summary judgment under Rule 56(b). Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009) ("Moreover, a federal court may consider patters of public record such as documents from prior state court proceedings in conjunction with a Rule 12(b)(6) motion."); Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006) (unpublished).

of the Note. The defendants then moved to dismiss the state court action, and the Superior Court held a hearing on the motion. After hearing from the parties, the Court granted the defendants' motion and dismissed the action pursuant to rule 12(b)(6). (Ex. D and E to Mot. Dismiss.) The Court entered an Order dismissing the action pursuant to Rule 12(b)(6). (Ex. E. to Mot. Dismiss.)

Plaintiffs then brought this action in federal court asserting claims for quiet title and RICO. Defendants iMortgage, MERS, and Fannie Mae now move to dismiss the claims asserted against them in the Second Amended Complaint.

### III. Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In considering a defendant's motion to dismiss, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92. Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The complaint need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-

65 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. ____, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that the defendants acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claims from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

Where a party's allegations sound in fraud, however, the allegations must also satisfy the heightened pleading standards of Rule 9. Cozzarelli v. Inspire Pharmaceuticals Inc., 549 F.3d 618, 629 (4th Cir. 2008); Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9 applies not only to claims asserting common law fraud, but to all claims where the allegations have the substance of fraud. Cozzarelli, 549 F.3d at 629. A claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim if it does not comply with Rule 9(b). Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999).

### IV. Analysis

#### A. The Motion to Dismiss by Defendants MERS and Fannie Mae

##### 1. Res Judicata bars the claims asserted by Plaintiffs

The doctrine of res judicata or claim preclusion prohibits a party from relitigating a claim that was either decided or could have been decided in a prior legal proceeding. Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161 (4th Cir. 2008). "The doctrine was designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" Id. at 161-62 (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S. Ct. 645 (1979)). In order to determine the preclusive effect of a state court judgment, the Court must look to the law of the state where the judgment was entered. Id. at 162; Davenport v. N.C. Dep't of Transp., 3 F.3d 89, 92 (4th Cir. 1993); Cannon v. Durham Cnty Bd. of Elections, 959 F. Supp. 289, 292 (E.D.N.C. 1997); In re Helms, 467 B.R. 374, 380 (Bankr. W.D.N.C. 2012); see also Whitaker v. Nash-Rocky Mount Bd. of Educ.,

-6-

No. 11-2060, 2012 WL 1142248, at *1 (4th Cir. Apr. 6, 2012) (unpublished).

In order for the doctrine of res judicata to bar a subsequent claim under North Carolina law, the party asserting the defense must show: (1) a final judgment on the merits in an earlier action; (2) that both actions involve the same causes of action; and (3) that the subsequent action involves either the same parties as the earlier suit or their privies. Tucker v. Frinzi, 474 S.E.2d 127, 128 (N.C. 1996); Williams v. Peabody, 719 S.E.2d 88, 92 (N.C. Ct. App. 2011). Res judicata, however, not only applies to the claims actually presented in the first action, but to all matters that could have been litigated in the prior proceeding. Williams, 719 S.E.2d at 93-94.

Plaintiffs' claims against Defendants MERS and Fannie Mae are barred by the doctrine of res judicata. Both Plaintiffs and Defendants MERS and Fannie Mae were parties to the original action in state court, and the claims asserted in the first action arise from the same set of events that form the basis of the claims asserted in this action.[2] Both actions allege that the Defendants have no interest in the property at issue, have failed to provide Plaintiffs with proof of ownership, and that Defendants undertook fraudulent actions in transferring the ownership of the Note. Although the Second Amended Complaint may assert a different legal theory than the prior action, this is insufficient to avoid the application of res judicata.[3] See Holly Farms Foods, Inc. v. Kuykendall, 442 S.E.2d 94, 97 (N.C. Ct.

---

[2] In fact, both actions assert a quit title claim.

[3] The prior action did not contain a civil RICO claim.

-7-

App. 1994); Williams, 719 S.E.2d at 93-94; Cannon, 959 F. Supp. at 292-93. As the North Carolina Supreme Court has explained:

> It is to be noted that the phase of the doctrine of res judicata which precludes relitigation of the same cause of action is broader in its application than a mere determination of the questions involved in the prior action. The bar of the judgment in such cases extends not only to matters actually determined, but also to other matters which in the exercise of due diligence could have been presented for determination in the prior action.

See Gaither Corp. v. Skinner, 85 S.E.2d 909, 911 (N.C. 1955).

Finally, the prior action resulted in a final judgment on the merits. The Superior Court granted a motion to dismiss and dismissed all the claims asserted by Plaintiffs pursuant to Rule 12(b)(6) for failure to state a claim. "When . . . a trial court dismisses a claim under Rule 12(b)(6) for failure to state a claim for relief, that dismissal operates as an adjudication on the merits unless the court specifies that the dismissal is without prejudice." Cnty of Durham v. Dayne, 673 S.E.2d 683, 687 (N.C. Ct. App. 2009) (internal quotation and citation omitted); Hill v. West, 657 S.E.2d 698, 700 (N.C. Ct. App. 2008); Davis Lake Cmty Assoc., Inc. v. Feldmann, 530 S.E.2d 870, 871 (N.C. Ct. App. 2000). Although Defendants MERS and Fannie Mae also moved to dismiss some of the claims in the state court action pursuant to Rule 12(b)(1), which would not be an adjudication on the merits, see Street v. Smart Corp., 578 S.E.2d 695, 698 (N.C. Ct. App. 2003), the Court did not dismiss any of the claims pursuant to Rule 12(b)(1). Rather, the Superior Court dismissed the entire Complaint and Amended Complaint pursuant to Rule 12(b)(6). Accordingly, the Superior Court's dismissal

of Plaintiffs' claims in the prior action operates as an adjudication on the merits and a final order for purposes of res judicata. Plaintiffs are thus barred under the doctrine of res judicata from reasserting these claims in a subsequent action, and the claims asserted against Defendants MERS and Fannie Mae are subject to dismissal. The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss [# 52].

2. The RICO claims fail as a matter of law

Even assuming that Plaintiffs' RICO claim is not barred by res judicata because the claims could not have been presented in the first action, the claim is still subject to dismissal. RICO provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "A person injured in his business or property by reason of a violation of section 1962 . . . may sue . . . and shall recover threefold the damages he sustains and the cost of the suit . . . ." 18 U.S.C. § 1964(c).

A civil RICO claim has four essential elements: "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." Salinas v. U.S., 522 U.S. 52, 62, 118 S. Ct. 469, 476 (1997); Whitney, Bradley & Brown, Inc. v. Kammermann, 436 F. App'x 257, 258 (4th Cir. 2011) (unpublished); Kerby v. Mortgage Funding Corp., 992 F. Supp. 787, 798 (D. Md. 1998). In addition, a plaintiff must plead at least two predicate acts of racketeering forming a pattern of

racketeering. American Chiropractic Ass'n Inc. v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004); Anderson v. Found. for Advancement, Educ. and Em't of Am. Indians, 155 F.3d 500, 505 (4th Cir. 1998). As the Fourth Circuit has explained, allegations of two predicate acts is not itself sufficient to satisfy the pattern of racketeering element of a civil RICO claim. Anderson, 155 F.3d at 505; Internal Data Bank, Ltd. v. Zepkin, 812 F.2d 149, 154 (4th Cir. 1987). "[A] plaintiff must allege a continuing pattern and a relationship among the defendant's activities showing they had the same or similar purposes." Anderson, 155 F.3d at 505.

In an attempt to state a civil RICO claim, the Second Amended Complaint alleges that Defendants have perpetrated a fraud by committing two acts of mail fraud. Specifically, Plaintiffs allege that Defendants mailed an altered document to a third party, who in turn mailed a copy to Plaintiffs. (Pls.' Second Am. Compl. ¶¶ 45-46.) Such allegations, however, are insufficient to state a civil RICO claim.

As a threshold matter, the Second Amended Complaint fails to allege that the Defendants were engaged in an enterprise. See Delk v. Arvin Meritor, Inc., 179 F. Supp. 2d 615, 627 (W.D.N.C. 2002) (Thornburg, J.). Moreover, the Second Amended Complaint fails to allege a pattern of racketeering activity. See Anderson, 155 F.3d at 505. At most, Plaintiff has alleged a single, limited fraudulent scheme by some of the Defendants and third parties to alter the Note. As the Fourth Circuit has explained:

> To allow a "pattern of racketeering" to flow from a single, limited scheme such as this one would undermine Congress's intent that RICO

serve as a weapon against ongoing unlawful activities whose scope and persistence pose a special threat to social well-being. The present case does not involve a "pattern of racketeering," but ordinary claims of fraud best left to the state common law of frauds and to well-established federal remedial provisions.

Zepkin, 812 F.2d at 155 (internal quotations and citation omitted); see also Anderson, 155 F.3d at 506.

Finally, Plaintiffs have not sufficiently alleged two predicate acts of mail fraud because there are no allegations that Plaintiffs relied on the material misrepresentations to their detriments and, thus, were injured by the pattern of racketeering activity. See Chisolm v. TransSouth Fin. Corp., 95 F.3d 331, 337 (4th Cir. 1996); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004). In fact, Plaintiffs allege that they knew that the altercations on the Note were fraudulent. Because there are no allegations that Plaintiffs detrimentally relied on the fraudulent mailings, and that such mailings were the proximate cause of the alleged injury to Plaintiffs' property, the RICO claim is subject to dismissal. See Trigon Healthcare, 367 F.3d at 233. The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss [# 52].

B. **The Motion to Dismiss by iMortgage**

The Second Amended Complaint also fails to state a cognizable claim against Defendant iMortgage. The only factual allegations in the Second Amended Complaint related to Defendant iMortgage are that it has its headquarters in Pittsburgh, Pennsylvania (Pls.' Second Am. Compl. ¶ 7), and that it is the trustee named on the deed of trust (Id. ¶¶ 11, 13). There are no factual allegations that

Defendant iMortgage participated in any of the acts constituting the alleged fraudulent activities related to the RICO claims or undertook any other actions. In fact, it appears that the only reason that Defendant iMortgage is named in this lawsuit is because it was listed as the trustee on the Deed of Trust. As such, the Second Amended Complaint fails to contain sufficient factual allegations to state a claim against Defendant iMortgage.

Moreover, even assuming that Plaintiffs did allege that Defendant iMortgage participated in the alleged acts of mail fraud that form the basis of their RICO allegations, the RICO claim against Defendant iMortgage fails for the same reason as the claims asserted against Defendants MERS and Fannie Mae; the Second Amended Complaint fails to allege that Plaintiffs relied on the material misrepresentations to their detriments and, thus, were injured by the pattern of racketeering activity. See Chisolm, 95 F.3d at 337; Trigon Healthcare, 367 F.3d at 233. Finally, the Second Amended Complaint fails to allege an essential element of a quiet title claim against Defendant iMortgage - that Defendant iMortgage is asserting a claim to the property that is adverse to Plaintiffs' title. See Countrywide Home Loans, Inc. v. Bank One, N.A., 661 S.E.2d 259, 262 (N.C. Ct. App. 2008). In fact, the Second Amended Complaint specifically alleges that Defendant iMortgage claims that it has *no* interest in the Note. (Pls. Second Am. Compl. ¶ 44.) Because there are no allegations in the Second Amended Complaint that Defendant iMortgage is currently asserting a claim to the property adverse to Plaintiffs' title, Plaintiffs' quit title claim fails as a matter of law. See Bank One,

661 S.E.2d at 262. The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss [# 53].

### VI. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Motions to Dismiss [# 52 & # 53].

Signed: August 6, 2012

Dennis L. Howell
United States Magistrate Judge

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).